[Civ. No. 4626.   Third Appellate District.—April 12, 1932.]

THE PEOPLE, Respondent, v. JOHN SOUTH, Appellant.

JOHN SOUTH, Petitioner, v. THE SUPERIOR COURT
OF NAPA COUNTY et al., Respondents.

E. L. Webber for Petitioner.

Wallace Rutherford for Respondents.

THE COURT.—The petitioner seeks a peremptory writ of mandate to compel the Superior Court of Napa County to dismiss an information charging him with murder. The application is based upon alleged failure to prosecute the cause with diligence.

The petitioner was arrested December 29, 1929, at Yountville, under a federal process, for violating the prohibition act. In the mêlée he shot the federal officer, Robert D. Freeman, in the shoulder. Under a *mittimus,* he was temporarily placed in the custody of the sheriff of Napa County, as a federal prisoner. January 6, 1930, he was indicted by the federal grand jury of the Northern District of California, upon four counts, to wit: Resisting an officer, illegal possession of intoxicating liquor, the unlawful use of a deadly weapon and the infliction of great bodily injury upon the arresting officer. He was retained as a federal prisoner in the Napa County jail until February 25, 1930, when he was transferred to the Sacramento County jail for trial in the United States District Court. In the meantime, Freeman died on February 8th from the effect of the gunshot wound. The sheriff of Napa County filed a complaint in the justice's court charging him with murder. On February 18th, his preliminary examination was held and he was bound over for trial in the superior court on a charge of murder. March 1st the district attorney filed an information against him in the Superior Court of Napa County charging him with the crime of murder. His arraignment was set for March 3d. On motion of the district attorney, because of the prisoner's absence, the arraignment was continued to March 17th. On the last-mentioned date the defendant was not present in court, but he appeared by counsel and moved to dismiss the information under the provisions of section 1382 of the Penal Code for failure to prosecute the action with diligence. This application was resisted by the district attorney, who filed his affidavit in support of his opposition thereto. The affidavit averred the foregoing facts and alleged the defendant was retained at all times since the commencement

of the charge of murder against him, in the exclusive custody of the federal officers as their prisoner; that the district attorney had demanded of the federal officers custody of the person of the petitioner for the purpose of trying him on the charge of murder, but that "said United States governmental officials declined . . . to place the said John South under the jurisdiction of the above entitled Superior Court". The motion to dismiss the information was thereupon denied and the cause temporarily dropped from the calendar.

On May 14, 1930, the defendant South was tried and convicted in the United States District Court of one or more of the counts contained in the indictment, and sentenced to the federal prison at McNeil Island for the term of ten years. He is still confined in that institution as a federal prisoner.

Subsequently, on January 16, 1932, the defendant again moved the Superior Court of Napa County to dismiss the information charging him with murder on the ground of failure to prosecute the action with diligence. The district attorney again resisted the motion and filed another affidavit in support of his opposition thereto. Once more he averred the foregoing facts, alleging that during the entire time the murder charge was pending against the accused he was retained in the exclusive custody of the federal officers as their prisoner; that he demanded the custody of the person for trying him on the charge of murder, but that the United States governmental officers refused to grant the request; that he was unable to secure the custody of the defendant, but that it was his intention to prosecute the charge of murder against him as soon as he was able to obtain jurisdiction of his person. The motion to dismiss the information was again denied. This petition for a writ of mandate was then instituted. All of the proceedings in the murder charge against the petitioner which transpired in Napa County are introduced as evidence on this hearing.

■ The Constitution and section 1382 of the Penal Code guarantee to a defendant a speedy trial of the offense with which he is charged. The question as to whether this privilege has been denied depends upon the circumstances of the particular case. (*In re Alpine*, 203 Cal. 731 [58

A. L. R. 1500, 265 Pac. 947].) Section 1382 of the Penal Code provides that "The court, *unless good cause to the contrary is shown,* must order the prosecution to be dismissed, . . . (2) If the defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information." It has been held that, in the absence of a showing reasonably excusing the delay, a defendant is absolutely entitled to a dismissal of the action, if he has not been brought to trial within sixty days from the time of filing the information against him. Upon the contrary, the information should not be dismissed if the trial of the cause is delayed *for good reason.* The conduct of an accused person in concealing himself from the officers to prevent his arrest or obstruct the process of the court may furnish good cause for refusing to dismiss an information for the failure to prosecute with diligence. (*In re Gere,* 64 Cal. App. 418 [221 Pac. 689].) Where the defendant is outside the state and beyond the jurisdiction of the court, this fact furnishes good reason for a delay in the prosecution of a criminal charge. Under such circumstances the delay is not a violation of the statutory limitation prescribed by section 1382 of the Penal Code. ■■■ So, also, while an accused person is in the exclusive charge of federal officers as a prisoner, and the state court is unable to procure jurisdiction of his person for the purposes of trial, this furnishes good cause for delay in the prosecution of his case. Under such circumstances an information may not be dismissed for lack of diligence. (*People* v. *Sichofsky,* 58 Cal. App. 257 [208 Pac. 340, 341]; *Ponzi* v. *Fessenden,* 258 U. S. 254 [22 A. L. R. 879, 66 L. Ed. 607, 42 Sup. Ct. Rep. 309, 310].) In the Sichofsky case above cited, it is said: "It probably is true . . . that after sentence by the federal court and until the end of his term and discharge, no state court could assume control over his body without the consent of the United States. . . . The United States District Court was the sole agency possessing authority to give consent, on behalf of the United States, to the assumption by the state court of control of the body of appellant."

Since the petitioner South was a federal prisoner under the exclusive control of the governmental authorities during

all the time the state criminal proceedings were pending against him, and the federal authorities refused to consent to confer jurisdiction of his person upon the state for the purpose of trial, there was good cause for delay in the trial of the case. Under such circumstances the constitutional and statutory guarantee of a speedy trial is not violated.

The case of *Ponzi* v. *Fessenden, supra,* is decisive of this petition for a writ of *mandamus.* In a characteristically clear and able opinion of the late Chief Justice Taft, it is held that when the federal government legally assumes the custody of one who is accused of a crime, the state authorities may not interfere with its superior right to retain the prisoner during the progress of his trial and for the period of his sentence, except by consent of the United States court having jurisdiction of the cause, or of the attorney-general. One who is charged with a crime is entitled to be personally present at all the proceedings of his trial. Neither a state nor federal court may try one who is charged with a crime without jurisdiction of the person and custody of the prisoner. (16 C. J. 174, sec. 225.) As between the federal and state courts, the one which first acquires jurisdiction and custody of the prisoner may retain it to the exclusion of the other court until the judgment is satisfied. (*Marsino* v. *Hogsett,* 37 Fed. (2d) 409–413.) By consent of the sovereignty holding jurisdiction of the prisoner, he may be subjected to trial in the courts of the other government by conferring custody of his person for that purpose. It is said in the Ponzi case, "He (the prisoner) may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. (*Re Andrews,* 236 Fed. 300; *United States* v. *Marrin,* 227 Fed. 314.) Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it. . . . The fact that he may have committed two crimes gives him no immunity from prosecution of either." (*Rigor* v. *State,* 101 Md. 465 [4 Ann. Cas. 719, 61 Atl. 631].)

Respecting the right of a federal or state court which first secures the custody of a prisoner to retain jurisdiction of his person until the judgment of that court has been

satisfied, the Ponzi case says, "The court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy to attain which it assumed control, before the other court shall attempt to take it for its purpose." This superior right to retain the custody of a prisoner without interference is justified in this language, "It is a principle of right and of law, and, therefore, of necessity. It leaves nothing to the discretion or mere convenience. These courts (federal and state) do not belong to the same system, so far as their jurisdiction is concurrent. . . . When one (sovereignty) takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty."

Finally applying the principles heretofore announced to the facts of the Ponzi case, the court says, "The federal district court first took custody of Ponzi. He pleaded guilty, was sentenced and imprisoned, and was detained under United States authority to suffer the punishment imposed. Until the end of his term and his discharge, no state court could assume control of his body without the consent of the United States."

Under the comity which exists between federal and state courts, upon proper application to the United States District Court or to the attorney-general who has custody of federal prisoners, jurisdiction of the person of one who is charged with another crime may be conferred upon the state court for the purpose of trial. This privilege will not ordinarily be requested so as to interfere with the regular proceedings of the federal court. The granting of the request is, of course, discretionary. In the present case it appears the district attorney of Napa County requested of the federal authorities the custody of the prisoner South for the purpose of trying him in the state court for murder, and that this request was refused "by the United States governmental officials". We assume there was valid reason for refusing this application at the time it was made. This court is not concerned with the reason for the refusal. The federal authorities had a right to refuse the request with or without cause. It necessarily follows from the foregoing authority

that so long as the United States refuses to confer jurisdiction of the person of John South upon the Napa County Superior Court, it may not be said the cause is not prosecuted with due diligence or that the defendant is deprived of his constitutional or statutory right to a speedy trial. This remains true, even if the trial of the defendant on the charge of murder is thus suspended until his federal sentence at McNeil Island is completed.

The writ of mandate is denied.